## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **JOHN DOE Jr., a minor, by and through,** <br> **and with JOHN DOE, Sr.,** | ) <br> ) <br> ) |
| *Plaintiff,* | ) <br> ) <br> ) |
| c/o Brennan Manna Diamond, LLC <br> Jeffrey C. Miller, Esq. <br> 200 Public Square, Suite 3270 <br> Cleveland, OH 44114 | ) <br> ) <br> )    CASE NO. <br> ) <br> ) <br> )    Honorable |
| v. | ) <br> ) |
| **ST. EDWARD HIGH SCHOOL,** <br> 13500 Detroit Avenue <br> Lakewood, Ohio 44107 | ) <br> ) <br> ) <br> ) |
| c/o TE Agent Corp. <br> 950 Main Avenue, Suite 1100 <br> Cleveland, OH 44113 | )    **COMPLAINT** <br> ) <br> ) <br> ) |
| and | ) <br> ) |
| **NATHAN BRANNEN,** <br> c/o St. Edward High School <br> 13500 Detroit Avenue <br> Lakewood, Ohio 44107 | ) <br> ) <br> ) <br> ) <br> ) |
| and | ) <br> ) |
| **JAMES P. KUBACKI,** <br> c/o St. Edward High School <br> 13500 Detroit Avenue <br> Lakewood, Ohio 44107 | ) <br> ) <br> ) <br> ) <br> ) |
| and | ) <br> ) |
| **KC MCKENNA,** <br> c/o St. Edward High School <br> 13500 Detroit Avenue <br> Lakewood, Ohio 44107 | ) <br> ) <br> ) <br> ) <br> ) |
| and | |

1

**JAYDEN WILLIAMS**
5420 Bluebell Drive,
Lyndhurst, OH 44124

and

**DARRYL E. WILLIAMS**
5420 Bluebell Drive,
Lyndhurst, OH 44124

and

**LASHAN D. SPENCER**
5420 Bluebell Drive,
Lyndhurst, OH 44124

and

**THOMAS HOFFMAN**
33120 Heartwood Avenue,
Avon, OH 44011

and

**EVAN TYPPO**
9035 Morgan Circle,
North Ridgeville, OH 44039

     *Defendants*.

     John Doe, Jr. ("Junior"), the real party in interest, by and through, and with, his father, guardian, personal representative, and agent John Doe, Sr. ("Senior") (collectively "Plaintiffs"), for their *Complaint* against Defendants St. Edward High School, Nathan Brannen, James Kubacki, KC McKenna, Jayden Williams, Darryl E. Williams, Lashan D. Spencer, Thomas Hoffman, and Evan Typpo, state the following:

## INTRODUCTION

1.     Senior brings this action as the father, guardian, personal representative, and agent of the real party in interest, Junior, pursuant to Fed. R. Civ. P. 17. Senior is Junior's

guardian, as Junior is a juvenile resident of Cuyahoga County, Ohio and former student of St. Edward High School.

2.  Plaintiffs are entitled to anonymity in these proceedings because of Junior's status as a juvenile and to mitigate the threat of further reprisals and retaliation against Junior.

3.  Before, during, and after his enrollment at St. Edward High School, Junior was subjected to physical and sexual assaults and batteries,[1] harassment, hazing, bullying and retaliation from other students associated with the track and cross-country teams.

4.  Defendant St. Edward High School is an Ohio non-profit corporation, sponsored by the Brothers of Holy Cross, and operates within Cuyahoga County, Ohio.

5.  Defendant Nathan Brannen ("Coach Brannen") was at all relevant times an employee of St. Edward High School and its Head Coach of the track and cross-country teams.

6.  Defendant James P. Kubacki was, at all times relevant, an employee of St. Edward High School and the President of the school and its Board ("President Kubacki").

7.  Defendant KC McKenna ("Principal McKenna") was, at all times relevant, an employee of St. Edward High School and the Principal of the school.

8.  Defendant Jayden Williams was, at all relevant times, a minor student at St. Edward High School, who resides at 5420 Bluebell Drive, Lyndhurst, OH 44124.

9.  Defendants Darryl E. Williams and Lashan D. Spencer are the parents of Jayden Williams, and reside at 5420 Bluebell Drive, Lyndhurst, OH 44124.

10.  Defendant Thomas Hoffman was, at all times relevant, a minor student at St. Edward High School, who resides at 33120 Heartwood Avenue, Avon, OH 44011.

---

[1] As set forth more fully herein, Plaintiffs contend that each assault and battery perpetrated upon Junior was sexual in nature. However, each such allegation in the pleading is also intended to convey that Junior was assaulted and battered if, *arguendo*, said assault and battery was not sexual in nature.

11. Defendant Evan Typpo was, at all times relevant, a minor student at St. Edward High School, who resides at 9035 Morgan Circle, North Ridgeville, OH 44039.

## JURISDICTION AND VENUE

12. Plaintiffs' legal claims are based, in part, on alleged violations of 20 U.S.C. § 1681, *et seq.*, its interpreting regulations, and Department of Education/Office of Civil Rights policies. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331. This Court possesses supplemental jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367.

13. Venue in this action is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events, acts or omissions giving rise to Plaintiffs' claims occurred in this district.

14. This court possesses subject matter jurisdiction.

## FACTS COMMON TO ALL CLAIMS

### (*St. Edward High School*)

15. St. Edward High School was founded as a comprehensive Catholic boys high school in 1949.

16. At all times relevant to this *Complaint*, St. Edward High School claimed to espouse and implement the following policies and principles into its operations:

   a. St. Edward High School prepares young men not only for scholastic success, but also instills positive values within them.

   b. St. Edward High School students and staff must act with integrity, honesty, and respect.

   c. St. Edward High School expects students to adhere to the Christian values the school espouses, whether they are in or out of school.

   d. St. Edward High School fosters a community wherein all individuals are treated with dignity, integrity, and respect.

4

e.   St. Edward High School students are entitled to pursue their fullest intellectual, social, spiritual, emotional, and physical potential.

f.   St. Edward High School does not tolerate harassment of any kind, including derogatory or demeaning comments, unwanted physical contact, touching, or assault, including that which concerns sexual orientation.

g.   St. Edward High School treats information regarding harassment seriously, and reviews and investigates any such incidents  promptly, confidentially, and thoroughly.

h.   St. Edward High School faculty and staff members are required to report incidents of harassment to the St. Edward High School Dean of Students or another administrator.

i.   St. Edward High School students and staff must accept responsibility for one's actions.

j.   St. Edward High School students and staff are responsible for the social regulations inside and outside the classroom.

k.    St. Edward High School evaluates matters of discipline both within the school and outside the normal school day, including during the summer months when school is not in session.

l.   St. Edward High School takes serious responsibility with regard to disciplinary matters affecting a student's health and well-being.

m.   St. Edward High School may dismiss students for misconduct.

n.   St. Edward High School students may be precluded from participating in athletics or other extracurricular activities if the student displays a disregard for school rules and policies.

o.    St. Edward High School students are prohibited from taking videos or photos at school events without the permission of St. Edward High School.

p.   St. Edward High School students are prohibited from utilizing any electronic medium to post, possess, transmit, or host offensive posts or messages concerning religious, ethnic, racial, sexual, or gender related slurs/jokes, or transmit offensive, harassing messages, or pornographic material.

q.   The cell phones of St. Edward High School students may be searched if there is reasonable suspicion that impermissible content is contained on said cell phone.

r.  Harassment incidents concerning explicit material are especially prohibited, and may lead to increased punishment of an offending student.

s.  St. Edward High School students must promptly report any inappropriate or unsuitable materials they receive to St. Edward High School officials.

t.   St. Edward High School proactively monitors how students are using social networking sites.

17.  Tuition at St. Edward High School exceeds $18,000.00 per year.

### (*Junior's Enrollment and Experience at St. Edward High School*)

18.  Prior to beginning high school, Junior was an excellent student and a gifted runner who excelled in track and cross-country.

19.  In 2019, Junior enrolled in St. Edward High School over other options available to him based on the representations of St. Edward High School regarding its school mission, student life and responsibility, and commitment to excellence, including those policies and principles outlined in Paragraph 16 of this *Complaint*.

20.  The representations were made during Plaintiffs' visits to the school, on its website www.sehs.net, and in its publications, including the Student & Parent/Guardian Handbook.

21.  Those representations have proven false.

### (*The Bellville Camp*)

22.   In the summer before Junior's freshman year at St. Edward High School, Coach Brannen encouraged Junior to attend a week-long, overnight running camp in Bellville, Ohio ("Bellville Camp") with older students from the St. Edward High school track and cross-country teams.  Throughout Coach Brannen's tenure at St. Edward High School, he encouraged the student-athletes he coached at St. Edward High School to attend the Bellville Camp, and Coach Brannen maintained close contacts with officials

at the Bellville Camp, who regularly told Coach Brannen about the athletic progress and activities of student-athletes from St. Edward High School. During the camp, student-athletes from St. Edward High School wore and were encouraged to wear athletic clothing containing St. Edward High School's name and logo.

23. In July of 2019, Junior attended the Bellville Camp and was assigned to housing with older St. Edward High School students.

24. Although the Bellville Camp was held away from St. Edward High School property and occurred over the summer when St. Edward High School was not officially in academic session, St. Edward High School policies and principles (e.g., on its website and other publications, including its Student and Parent/Guardian Handbook) provide St. Edward High School students can be disciplined and dismissed from school for inappropriate activities, irrespective of whether it occurs on or off school property and/or during summer breaks. Also, in accordance with St. Edward High School's policies and procedures, St. Edward High School regularly monitors the social media of St. Edward High School students and reserves the right to discipline any student for inappropriate activity on social media while the student is on campus, off campus, or when school is closed during summer or other breaks.

25. Upon information and belief, Coach Brannen also had close contacts that worked at the Bellville Camp, who regularly informed Coach Brannen about the development and activities of the St. Edward High School student-athletes that attended the Bellville Camp.

26. Over the course of the camp, Junior was sexually and physically assaulted and battered by Jayden Williams, a student-athlete of St. Edward High School, on three (3) separate

7

occasions. Since Jayden Williams openly boasted about this behavior and widely discussed it will fellow teammates at St. Edward High School, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents, actually knew or should have known of Jayden Williams' egregious sexual assaults and batteries of Junior.

27.    Jayden Williams was older and physically stronger than Junior.

28.    Jayden Williams was an established student-athlete for St. Edward High School.

29.    Each incident of sexual assault and battery Jayden Williams perpetrated on Junior at the Bellville Camp was unprovoked, as Jayden Williams approached Junior, threw him down, pinned his arms, and then simulated anal sex upon Junior.

30.    Upon information and belief, prior to Jayden Williams' sexual assault of Junior, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents actually knew or should have known of Jayden Williams' long history of sexual assaults, his open boasting of his sexual assaults perpetrated on other students of St. Edward High School, his repeated use of inappropriate language, and his utilization of social media to publish sexually explicit language, videos, and boasts of sexual assaults and other inappropriate sexual activities. Yet, Coach Brannen, Principal McKenna, Principal Kubacki, officials at St. Edward High School, and Jayden Williams' parents failed to warn Junior, Junior's parents, officials at the Bellville Camp, or students participating in the Bellville Camp of Jayden Williams' history of sexual assaults and other inappropriate behavior.

31.    In each incident at the Bellville Camp where Jayden Williams sexually assaulted Junior,  Defendants Typpo and Hoffman were present and observed the behavior. Yet,

8

contrary to policies and procedures in St. Edward High School's website and other publications, including the Student & Parent/Guardian Handbook, St. Edward High School took no steps to prevent the sexual assaults.

32. Jayden Williams also engaged in outrageously inappropriate sexual behavior with another Bellville Camp attendee and was caught by a camp representative.

33. The Bellville Camp administrators required Jayden Williams to call his parents to report the misconduct; however, Jayden Williams instead called another family member who pretended to be his mother, Lashan D. Spencer.

34. Upon further investigation, Jayden Williams was then heard boasting about how he fooled the Bellville Camp administrators. Consequently, the Bellville Camp administrators subsequently informed Jayden Williams' parents about his misconduct at the camp.

35. Before, during, and after July 2019, Coach Brannen actually knew or should have known that Jayden Williams habitually engaged in inappropriate sexual misconduct when left unsupervised and that he lacked respect for authority.

36. Although Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents actually knew or should have known about Jayden Williams' egregious sexual assaults at the Bellville Camp, they individually and/or collectively failed to discipline, seek appropriate counseling, and/or report the egregious and outrageous behavior to legal authorities, as required by St. Edward High School policies and principles on its website and other publications, including the Student and Parent/Guardian Handbook. As a result of this inaction,

Jayden Williams was permitted to continue his pattern of stalking and sexually assaulting and battering Junior and others.

### *(The Team Dinner & Practices)*

37. In September of 2019, Junior's freshman school year at St. Edward High School commenced. He was a member of the St. Edward High School cross-country team.

38. On September 6, 2019, at a team-sponsored pre-meet dinner ("Team Dinner"), Jayden Williams—also a member of the cross-country team—followed Junior into the restroom.

39. In direct view of other St. Edward High School students, including Thomas Hoffman and Evan Typpo, Jayden Williams threw Junior to the floor, pinned his arms, and again simulated anal sex upon Junior.

40. Despite the policies and principles provided on St. Edward High School's website and other publications, including the Student and Parent/Guardian Handbook, Typpo and Hoffman made no attempt to physically stop or verbally oppose Jayden Williams' sexual assault of Junior in the restroom.

41. Jayden Williams and other students, including Thomas Hoffman and Evan Typpo, then mocked Junior and openly laughed about the sexual assault and battery upon returning to the meal. As a result of these students openly laughing about the sexual assault of Junior and discussing it during practices, meets, during school, and on social media, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents actually knew or should have known about the sexual assault of Junior in the restroom.

42.  Despite the egregious nature of Jayden Williams' sexual assault of Junior, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents  individually and/or collectively failed to discipline, seek appropriate counseling, and/or report the egregious and outrageous behavior to legal authorities, as required by St. Edward High School policies and principles on its website and other publications, including the Student and Parent/Guardian Handbook. As a result of this inaction, Jayden Williams was permitted to continue his pattern of stalking and sexually assaulting and battering Junior and others.

43.  Upon information and belief, throughout St. Edward High School cross country and track team practices in the fall of 2019, Jayden Williams and another student athlete engaged in simulated homosexual activities and banter while they openly discussed, laughed about, and shared on social media information regarding Jayden Williams' repeated sexual assaults and batteries of Junior.

44.  Jayden Williams and the other student-athletes forced their inappropriate sexual banter and egregious misbehavior upon other members of the cross-country and track teams.

45.  Coach Brannen was aware of Jayden Williams and the other student athlete engaging in the simulated homosexual activities and banter which occurred during cross-country practices and/or activities. Because Jayden Williams openly discussed his sexual assaults and batteries of Junior and others at St. Edward High School during cross-country practices and meets, and on social media, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams'

parents actually knew or should have known about Williams' repeated stalking and sexual assaults and batteries of Junior.

46. Despite this knowledge, St. Edward High School, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents, individually and/or collectively, failed to discipline, seek appropriate counseling, and/or report the egregious and outrageous behavior to legal authorities, as required by St. Edward High School policies and principles on its website and other publications, including the Student and Parent/Guardian Handbook. As a result of this inaction, Jayden Williams was permitted to continue his pattern of stalking and sexually assaulting and battering Junior and others.

### *(The Dayton Meet)*

47. On or about September 20, 2019, the St. Edward High School cross-county team traveled to Dayton, Ohio for a multi-day meet where the team stayed overnight in a hotel ("Dayton Meet").

48. Coach Brannen assigned the student-athletes to rooms, and his supervision then ceased in its entirety, even though he had actual knowledge of Jayden Williams' habitual stalking and sexual assaults and batteries of Junior.

49. Junior was assigned to a room with three other freshmen students.

50. On September 20, 2019, Jayden Williams and/or Typpo and/or Hoffman instructed one of the freshman roommates of Junior to leave the door to Junior's room unlocked.

51. During the evening of September 20, 2019, Jayden Williams, Thomas Hoffman, Evan Typpo and other older members of the St. Edward High School cross-country team entered Junior's room while Junior was seated on his bed.

52.    Jayden Williams approached Junior and pinned and held him face down so that he could not fight or escape.

53.    Jayden Williams locked Junior's arm and otherwise fully restricted Junior's movement.

54.    Jayden Williams then physically and sexually assaulted and battered Junior, yet again simulating anal sex upon Junior.

55.    Despite the requirements in St. Edward High School's policies and principles on its website and other publications, including the Student and Parent/Guardian Handbook, none of the other St. Edward High School students stopped or opposed Jayden Williams from sexually assaulting and battering Junior.  Instead, they all laughed and mocked Junior during the time they witnessed Jayden Williams' sexual assault and battery of Junior.

56.    Typpo and/or Hoffman filmed the sexual assault and battery.

57.    A copy of the video captured by Typpo and/or one of the other students has been preserved and is available for inspection.

58.    Upon information and belief, other members of the St. Edward High School cross-country team also filmed the sexual assault and battery with their personal smartphones.

59.    Junior hereby expressly reserves the right to further amend this Complaint and/or institute separate actions against the other students as their identities are learned in the discovery of this matter.

60.    Over the next days and months, members of the St. Edward High School cross-country team shared videos of the sexual assault and battery amongst themselves, other teammates who were not present, and other students at St. Edward High School across social media.

61.　The video of Jayden Williams holding down and committing the sexual assault and battery against Junior at the Dayton Meet became known as the "Rape Video."

62.　The video was shared for the purpose of humiliating and intimidating Junior.

63.　Jayden Williams shared the Rape Video over the course of the next year, including sending it in June of 2020 to the St. Edward High School cross-country group Snapchat.

64.　In that message, Jayden Williams threatened to commit a similar assault and battery against another incoming freshman.

65.　Because of the wide distribution of the Rape Video on social media and the wide discussions about it amongst members of the St. Edward High School cross-county and track teams, and its distribution to the entire St. Edward High School community, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents actually knew or should have known about Jayden Williams' recorded sexual assault and battery of Junior.

66.　Yet, despite this knowledge, St. Edward High School, Coach Brannen, Principal McKenna, Principal Kubacki, other officials at St. Edward High School, and Jayden Williams' parents individually and/or collectively failed to discipline, seek appropriate counseling, and/or report the egregious and outrageous behavior to legal authorities, as required by St. Edward High School policies and principles on its website and other publications, including the Student and Parent/Guardian Handbook. As a result of this inaction, Jayden Williams was permitted to continue his pattern of stalking and sexually assaulting and battering Junior.

### *(Junior's Parents Confront St. Edward High School)*

67.　On or about August 28, 2020, Jayden Williams again shared the Rape Video among

the St. Edward High School cross-country group Snapchat before a meet.

68.  Junior's parents happened to see the Rape Video on August 30, 2020.  They preserved the video and contacted Coach Brannen about the need for an immediate meeting of utmost importance.

69.  On September 1, 2020, Junior's parents met with Coach Brannen and began the meeting by informing him they saw a video of their son, Junior, being sexually assaulted and battered by another member of the St. Edward High School cross-country team.

70.  After viewing the video, Coach Brannen informed Junior's parents he "didn't even need to see that" because he knew Jayden Williams was the perpetrator, and referred to Jayden Williams as "a f***ing as***le."

71.  Coach Brannen also stated he had hoped Junior's parents were only meeting to complain about the inappropriate simulated homosexual activities and banter by Jayden Williams during practices.

72.  When Junior's parents inquired as to why Coach Brannen failed to supervise the setting wherein the sexual assault and battery could occur, Coach Brannen informed them he did not want to be responsible for any student-athlete supervision, and instead only wanted to "coach" the team. Although Coach Brannen had actual knowledge of Jayden Williams' long history of sexual assaults and batteries, he failed to explain why he did not warn and/or protect Junior and other students from Jayden Williams.

73.  Instead, Coach Brannen confirmed to Junior's parents he knew about the sexual misconduct of Jayden Williams while left unsupervised at the Bellville Camp, which predated subsequent sexual assaults and batteries perpetrated upon Junior.

15

74.     Coach Brannen confirmed to Junior's parents that he knew about the sexual misconduct of Jayden Williams during practices, which predated subsequent sexual assaults and batteries perpetrated upon Junior.

75.     Coach Brannen refused to listen to the audio of the Rape Video, even though Junior's parents informed him that all of the team members were laughing at and mocking their son. Coach Brannen already knew this, but he repeatedly failed to take any corrective action to protect Junior and other students from Jayden Williams' egregious behavior.

76.     When Junior's parents informed Coach Brannen they would be taking the matter to St. Edward High School administration, Coach Brannen threatened that a further report could make it worse on their son.

77.     Coach Brannen attempted to dissuade Junior's parents from escalating the report.

78.     On September 3, 2020, Junior's parents met at St. Edward High School with President Kubacki, Principal McKenna, Coach Brannen, and others and shared the Rape Video. Upon information and belief, these officials already had actual knowledge of the Rape Video, e-mail exchanges about the Rape Video, and the severe and pervasive sexual assaults and batteries Junior was forced to endure.

79.     On September 3 and September 4, 2020, Junior's parents provided the following information that was widely distributed among the St. Edward High School student body and that St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki already actually knew or should have known about:

a.   The Rape Video;

b.   Degrading comments against Junior;

16

    c.   Screenshots of Jayden Williams ranking the next class of incoming freshmen and suggesting that they be required to share nude images of themselves;

    d.   Bigoted and obscenely degrading comments concerning homosexuality;

    e.   An audio file of a scene of non-consensual anal sex between two men;

    f.   A screenshot showing the sharing and saving of an apparent pedophilic video;

    g.   A still image of a boy appearing to kiss a shirtless adult male;

    h.   Graphic photos and commentary regarding sexual behavior.

80.    The Rape Video shows:

    a.   The  Sexual Battery by Jayden Williams, as prohibited by O.R.C. § 2907.03 and/or Assault, as prohibited by O.R.C. § 2903.13.

    b.   The  Sexual Imposition by Jayden Williams, as prohibited by O.R.C. § 2907.06.

    c.   The Pandering Obscenity Involving a Minor in violation of O.R.C. § 2907.321 and/or Pandering Sexually Oriented Matter Involving a Minor in violation of O.R.C. § 2907.322, as it was  filmed by a student, later learned to by Typpo.

    d.   Concurrent filming by other students, which constitutes Pandering Obscenity Involving a Minor in violation of O.R.C. § 2907.321, and/or Pandering Sexually Oriented Matter Involving a Minor in violation of O.R.C. § 2907.322.

81.    On September 4, 2020, the Dean of Students of St. Edward High School informed the cross-country students and their parents via email of the initiation of an investigation "to fully understand and bring to light the impact of these types of postings."

82.    However, on September 4, 2020, at the same time as the email, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki specifically and

17

verbally instructed the students to delete any and all imagery, videos, content, and/or exchanges on their smartphones or social media before taking part in the investigation.

83. On September 8, 2020, Junior met and informed St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki of the other sexual assaults and batteries committed by Jayden Williams at the Bellville Camp, in addition to confirming the sexual assault and battery captured in the Rape Video. These individuals already actually knew or should have known the information Junior provided.

84. This was the only instance when St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki met with Junior either before, during, or after the so-called investigation.

85. At that point, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki ceased any further investigation and informed Junior and his parents it would refer the matter for criminal investigation with the Lakewood Police Department.

86. Over the next week, Jayden Williams, Hoffman and other St. Edward High School cross-country members continually pressured Junior to lie to investigators and/or to create a false story about the sexual assaults and batteries.

87. During the first few weeks of September of 2020, Coach Brannen joined student-athletes on practice runs, including Thomas Hoffman and Evan Typpo, and coached them on the stories to present when called in for any questioning.

88. Coach Brannen specifically identified Junior by name and told the student-athletes that Junior's mother was the basis of the complaints.

89.    On September 13, 2020, Hoffman, Typpo, and another student were overheard by
       Junior discussing with another team member about "sticking to the story" that the
       sexual assault and battery captured in the Rape Video was only a joke and that Junior
       was voluntarily "wrestling" with Jayden Williams.

90.    Upon information and belief, Coach Brannen concocted the story that the assault and
       battery was a joke and was voluntary "wrestling," and instructed Hoffman and Typpo
       to spread it among other team members.

91.    On September 15, 2020, Hoffman, who is believed to have been a team captain,
       reminded the other team members to delete any evidence of the sexual assault and
       battery, hazing, or bullying.

92.    On September 15, 2020, one of the other students acknowledged that several versions
       of the Rape Video existed and that it had been shared outside of St. Edward High
       School. That student instructed the other team members to delete all copies of the
       videos, as well as contacting those with whom the videos had been shared.

93.    At or around the same time, Jayden Williams told the team members that, if the video
       was viewed by the St. Edward High School administration, then he "would be going to
       jail."

94.    On September 15, 2020, Jayden Williams instructed the team members to delete any
       other inappropriate content.

95.    In that same exchange, Hoffman stated: "when we're asked about the culture of our
       team and u actually think about it, like actually think about this isn't the first time
       something like this happened, or the second time, or the third time for that matter, and

that's fricken sad. This isn't the first time that it has blown up like this either where parents and faculty are involved."

96.     All of the foregoing information was shared by Junior and/or his parents with St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki. However, between September 8, 2020 and September 21, 2020, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki merely asked students leading questions about what they saw at the Dayton Meet and whether Junior acted upset by it.

97.     During the periods of aforementioned leading questions, Jayden Williams confronted Junior, attempted to intimidate him, and insulted him.

98.     During the periods of aforementioned leading questions, other student-athletes sent homosexual comments via social media in an attempt to intimidate and insult Junior.

99.     At no time during their investigation did Coach Brannen, Principal McKenna, and/or President Kubacki undertake to obtain or preserve any documentary evidence regarding the sexual assaults and batteries perpetrated upon Junior, including but not limited to electronic communications.

100.    St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki placed the investigation into the hands of the school hockey coach, who was neither qualified nor trained to investigate sexual assault and battery, hazing, bullying, or to review the social media history and electronic devices of the parties involved.

101.    Throughout this period, Principal McKenna continued to lie directly to Junior and his parents.

20

102.   Principal McKenna repeatedly assured Junior and his parents that St. Edward High School was continuing to cooperate fully with an investigation facilitated by the Lakewood Police Department.

103.   Principal McKenna represented to Junior's parents that St. Edward High School was working with the Lakewood Police Department as late as September 21, 2020.

104.   However, as of at least September 16, 2020, the Lakewood Police Department had closed any investigation because it did not have jurisdiction over the events connected to the Dayton Meet.

105.   From September 19, 2020 through September 23, 2020, Junior and his parents repeatedly and specifically informed St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki that the sexual assaults and batteries, the lack of any investigation, the continuing harassment and intimidation, and the dereliction of duty by St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki was causing worsening physical injuries to Junior, who was vomiting, suffering insomnia, and otherwise suffering from post-traumatic stress disorder ("PTSD").

106.   St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki determined that not enough evidence existed for any meaningful corrective measure.

107.   St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki failed to implement any meaningful corrective measures.

***(Junior is forced to leave the toxic culture at St. Edward High School, which persists today)***

108.   Junior stopped attending in-person classes at the end of September of 2020 as a result

of Defendants' misconduct and the ongoing harassment and retaliation, and never resumed in-person classes as a result of the lack of investigation or meaningful remedy.

109. Junior stopped attending St. Edward High School altogether in December of 2020 because of the sexual assaults and batteries, and subsequent retaliatory bullying, hazing, and intimidation, and St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki's failure to investigate or fix the issues.

110. Despite the departure of Junior and his family from St. Edward High School, Junior still receives social media and text messages from the aforementioned perpetrators and other members of the cross-country team, all of which is designed to intimidate, harass, and/or humiliate him.

111. Junior has received a Civil Protection Order through the Cuyahoga County Juvenile Court preventing Jayden Williams from being in physical proximity to Junior.

112. St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki are aware of the Civil Protection Order preventing Jayden Williams from being in physical proximity to Junior. However, Coach Brannen continues to schedule Jayden Williams to participate in the same athletic competitions (and even the same specific events) Junior is slated to participate in.

113. Upon information and belief, Jayden Williams and Hoffman remain members of the St. Edward High School track and cross-country teams.

114. Upon information and belief, Jayden Williams and Hoffman continue to engage in obscenely misogynistic and bigoted behavior and comments in full view of other St. Edward High School athletes and coaches.

115. To date, St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki have also not investigated any of the pedophilic exchanges or the targeting of in-coming freshman described above, nor have they reached out to Junior in any respect since September 8, 2020.

116. To date, Jayden Williams, Thomas Hoffman, and Evan Typpo remain student-athletes of St. Edward High School. Further, St. Edward High School, Coach Brannen, Principal McKenna, or President Kubacki have never held them accountable for their crimes and other misconduct in any meaningful way. Nonetheless, Jayden Williams has been adjudged delinquent by the Cuyahoga County Juvenile Court for his actions against Junior.

117. Since Junior departed St. Edward High School, the toxic, harmful, and unlawful culture within St. Edward High School and its programs persists.

118. Since Junior's departure, St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki have received additional grievances from St. Edward High School's constituents over the toxic, harmful, and unlawful culture within St. Edward High School and its programs. These grievances include, but are not limited to, the ongoing outrageous behavior of Jayden Williams.

119. St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki have continuously failed to undertake any adequate remedial or disciplinary measures to address the toxic, harmful, and unlawful culture within St. Edward High School and its programs.

**COUNT ONE – TITLE IX VIOLATION**
**(Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.*
against St. Edward High School)**

120.    Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

121.    Title IX covers a host of conduct that creates a hostile educational environment based on sex, including sexual harassment, gender-based harassment, and sexual violence, which is a form of sexual harassment that includes rape, sexual assault, sexual battery and sexual coercion.

122.    Title IX protects students from sexual violence in connection with all the academic, educational, extracurricular, athletic, and other programs of a school, whether the programs occur on school grounds, on a school bus, during a field trip, or during any other school sponsored events.

123.    Title IX applies to all schools that receive any federal funds. This includes all public elementary and secondary schools, private and parochial schools that participate in the federal free lunch program or receive other federal funding, and schools that are formally affiliated with another school (such as a diocese) that receives federal money.

124.    St. Edward High School has received federal funding, including funding for broadband services associated with its school and library.

125.    Title IX requires schools to address sexual violence regardless of the sex of the complainant or alleged perpetrator, including when they are members of the same sex.

126.    Title IX of the Education Amendments of 1972, codified at 20 U.S.C § 1681 (Title IX) provides an avenue of legal relief for victims of sexual abuse and harassment that occurred in connection with educational institutions.

127.    Title IX provides a cause of action against a school and its responsible employees when their actions are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

128.    St. Edward High School operations are covered by Title IX.

129.    St. Edward High School had actual knowledge of student-on-student sexual harassment and abuse that was severe, pervasive, and objectively offensive, and which deprived Junior of access to the educational opportunities and benefits of the school.

130.    St. Edward High School is liable under Title IX for a deliberately indifferent response to severe, pervasive, and objectively offensive student-on-student sexual harassment.

131.    St. Edward High School is liable under Title IX as their deliberate indifference has deprived Junior of the educational opportunities and benefits provided by the school.

132.    The response of St. Edward High School was so non-existent and/or deficient so as to amount to deliberate indifference to the harassment and abuse.

133.    Coach Brannen, Principal McKenna, and President Kubacki possessed actual notice of the sexual assaults and batteries, sexual harassment, and abuse perpetrated upon Junior.

134.    Coach Brannen possessed actual knowledge of sexual assaults and batteries, sexual harassment, and abuse perpetrated upon Junior.

135.     Coach Brannen, in his role as head coach, is an official of St. Edward High School who at a minimum had authority to address the sexual assaults and batteries, sexual harassment, and abuse and to institute corrective measures on Junior's behalf.

136. Coach Brannen possessed actual knowledge of a substantial risk of sexual assaults and batteries, sexual harassment, and abuse within St. Edward High School programs and activities.

137. President Kubaki, in his role as President, is an official of St. Edward High School who at a minimum possessed authority to address the sexual assaults and batteries, sexual harassment, and abuse, and to institute corrective measures on Junior's behalf.

138. President Kubacki possessed actual knowledge of a substantial risk of sexual assault and battery, sexual harassment, and abuse within St. Edward High School programs and activities.

139. Principal McKenna, in his role as Principal, is an official of St. Edward High School who at a minimum possessed authority to address the sexual assaults and batteries, sexual harassment, and abuse, and to institute corrective measures on Junior's behalf.

140.  Principal McKenna possessed actual knowledge of a substantial risk of sexual assaults and batteries, sexual harassment, and abuse within St. Edward High School programs and activities.

141. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki exercised substantial control over the harassers and abusers, including but not limited to Jayden Williams, Thomas Hoffman, and Evan Typpo, as set forth in the Student Handbook of St. Edward High School, which includes disciplinary policies.

142. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki , at all times, maintained disciplinary authority over the students responsible for the sexual assaults and batteries, and other harassment perpetrated on Junior, including but not limited to Jayden Williams, Thomas Hoffman, and Evan Typpo.

143. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki exercised substantial control over the harassers responsible—including but not limited to Jayden Williams, Thomas Hoffman, and Evan Typpo—in the context in which the sexual assaults and batteries, and other harassment occurred, to wit, they occurred at school-sponsored events, trips, and extracurricular activities.

144. After reporting the sexual assaults and batteries, and other harassment, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki failed to stop the behavior.

145. Junior was subjected to further acts of sexual harassment in social media and messaging and in-person during practices, which, upon information and belief, were designed to humiliate him further as a result of his complaint.

146. The sexual assaults and batteries, and other harassment Junior suffered was severe, pervasive, and objectively offensive.

147. The sexual assaults and batteries, and other harassment Junior suffered caused him to withdraw from in-person school and ultimately withdraw from St. Edward High School entirely.

148. The sexual assaults and batteries, and other harassment Junior suffered harmed his grades, his athletics, and his overall quality of life.

149. Junior was denied educational access resulting from the sexual assaults and batteries, other harassment, and the subsequent retaliation.

150. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki feigned an investigation, and instead instructed students to delete information relevant and critical to the purported investigation.

151. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki actually knew or should have known Junior was discriminated against as a result of the sexual assaults and batteries, harassment, intimidation, and hostile environment caused by other students.

152. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki actually knew or should have known that their deliberate indifference to Junior's complaints exacerbated the hostile environment within St. Edward High School programs and activities.

153. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki failed to carry out their duties and obligations pursuant to Title IX to investigate and take corrective action.

154. St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki permitted the existence of an educational and athletic environment in which discriminatory, harassing, and abusive practices occurred against Junior that were sufficiently severe or pervasive to create an environment that was both subjectively and objectively hostile, abusive, and retaliatory.

155. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki knew of and tolerated the sexually abusive educational and athletic environment, or, in the alternative, knew, or should have known, of its existence, yet failed to conduct proper investigations and failed to take remedial action.

156. As a direct and proximate result of St. Edward High School, Coach Brannen, Principal McKenna, and President Kubacki's unlawful actions or inactions, Junior sustained and will continue to suffer harm including, but not limited to, loss of educational

opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

157. Junior is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorney's fees and costs, and other appropriate relief.

## COUNT TWO – TITLE IX RETALIATION
### (Retaliation in Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* against St. Edward High School)

158. Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

159. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki retaliated against Junior in violation of Title IX by, *inter alia*, failing to properly investigate his claims of discrimination and sexual assault and battery.

160. In the course of their so-called investigation, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki deliberately provided sufficient information and directives to students to deduce that Junior was the complaining party.

161. Coach Brannen informed students, including Jayden Williams and Thomas Hoffman, that Junior was the source of the complaint and went further to blame Junior's mother for the investigation.

162. In doing so, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki exacerbated the intimidation, hazing, and abusive treatment toward Junior by the students.

163. St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki committed, caused, and/or aided and abetted the retaliatory conduct against Junior.

164. In retaliation against Junior for his complaint, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki refused to issue academic credit to Junior for the first quarter of 2020, which forced him to go through summer school at the conclusion of the academic year.

165. In retaliation against Junior for his complaint, St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki continue to place Jayden Williams in the same track meets and same events as Junior, despite their knowledge that Jayden Williams is subject to a Civil Order of Protection.

166. As a direct and proximate result of St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki's unlawful conduct in violation of Title IX, Junior suffered, and continues to suffer, harm for which he is entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm.

167. As a direct and proximate result of St. Edward High School, Coach Brannen, Principal McKenna, and/or President Kubacki's  unlawful actions, Junior sustained and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

168. Junior is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorney's fees and costs, and other appropriate relief.

## COUNT THREE–BREACH OF CONTRACT
### (Plaintiffs against St. Edward High School)

169. Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

170. Plaintiffs agreed to pay tuition to St. Edward High School in exchange for the educational services offered to Plaintiffs, including but not limited to St. Edward High School's adherence to, and enforcement of, its policies and principles as set forth in Paragraph 12 of this *Complaint* ("Educational Agreement").

171. Plaintiffs adhered to all their obligations under the Educational Agreement.

172. St. Edward High School breached its obligations under the Education Agreement by failing to adhere to, or enforce, the policies and principles as set forth in Paragraph 12 of this *Complaint*.

173. St. Edward High School's breaches included, but are not limited to, failing to ensure its students and faculty complied with St. Edward High School standards; failing to hold St. Edward High School students and faculty accountable for failing to adhere to St. Edward High School standards; failing to timely report and investigate the misconduct of St. Edward High School students and faculty; failing to provide Junior with the quality of scholastic opportunity St. Edward High School promised; failing to proactively monitor the electronic and social media activity of St. Edward High School students.

**COUNT FOUR – NEGLIGENT HIRING, RETENTION, AND SUPERVISION**
**(Plaintiffs against St. Edward High School)**

174. Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

175. St. Edward High School hired Principal McKenna and Coach Brannen and placed them into a position of trust and responsibility.

176. Coach Brannen knew Jayden Williams had a history of engaging in inappropriate sexual misconduct or other inappropriate behavior when left unsupervised.

177.  Coach Brannen knew he owed a duty of care to Junior and the other students entrusted to him to protect them from foreseeable harm during school-sponsored events.

178.  Coach Brannen admittedly avoided and/or disregarded any care or supervision of the students and instead preferred only to coach track.

179.  After learning about the sexual assaults and batteries of Junior from talking with St. Edward High School students, viewing their social media, and viewing the Rape Video depicting sexual assault and battery, Coach Brannen owed a duty to investigate, remediate, and preserve information.

180.  Instead, Coach Brannen attempted to dissuade further complaints about the sexual assault and battery.

181.  Coach Brannen instructed students to delete any evidence of the sexual assault and battery, or other information on their phones in advance of an investigation.

182.  Coach Brannen's actions were known, approved, and/or permitted by Principal McKenna.

183.  Principal McKenna owed a duty of care to Junior and the other students to investigate, remediate, and preserve information relating to student-on-student sexual assault and battery, bullying, hazing, intimidation, and retaliation.

184.  Principal McKenna knew that Coach Brannen had instructed students to delete relevant information and that students were creating false stories to present in the investigation.

185.  Principal McKenna assigned the internal St. Edward High School investigation to an individual who was wholly unprepared and lacked the knowledge, training, or skill to investigate claims of sexual abuse, bullying, hazing, intimidation and/or retaliation.

186. Knowing that Junior and his family were relying upon the St. Edward High School investigation, Principal McKenna deliberately misinformed them that the school was participating in a criminal investigation.

187. The incidents complained of by Junior were not the first or second instances of similar student-on-student misconduct during the employment of Principal McKenna and/or Coach Brannen.

188. St. Edward High School actually knew or should have known that Principal McKenna and/or Coach Brannen were incompetent, incapable, undertrained, and/or unable to protect Junior or other students, or to adequately investigate and remedy complaints of sexual assault and battery, hazing, bullying, intimidation and/or retaliation.

189. St. Edward High School actually knew or should have known that Principal McKenna and/or Coach Brannen had a propensity and/or history of disregarding, failing to investigate, and/or failing to remediate complaints of student-on-student misconduct.

190. Nonetheless, St. Edward High School placed Principal McKenna and/or Coach Brannen in a position wherein they were and are responsible for preventing, investigation, and remedying student-on-student misconduct.

191. As it pertains to Junior, St. Edward High School, Principal McKenna, and Coach Brannen failed to prevent, investigate, or remedy student-on-student misconduct.

192. Coach Brannen, Principal McKenna, and/or President Kubacki's negligence caused Junior physical, mental, and emotional harm, and caused him to withdraw from St. Edward High School.

193. As a direct and proximate cause of Coach Brannen, Principal McKenna, and/or President Kubacki's negligence, Plaintiff sustained, and will continue to suffer harm

including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

194. The actions of Coach Brannen, Principal McKenna, and/or President Kubacki were undertaken willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages.

## COUNT FIVE – NEGLIGENCE
**(Plaintiffs against Coach Brannen, Principal McKenna, and President Kubacki)**

195. Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

196. Coach Brannen, Principal McKenna, and President Kubacki owed duties of care to Junior including:

    a.   Protecting him from sexual assaults and batteries, hazing, and/or bullying by other students;

    b.   Protecting him from and otherwise supervising students who Coach Brannen, Principal McKenna, and/or President Kubacki actually knew or should have known to have a history of inappropriate sexual misconduct;

    c.   Supervising students in school-sponsored extracurricular activities;

    d.   Supervising students in school-sponsored athletics and athletic trips;

    e.   Preventing student-on-student sexual assaults and batteries;

    f.   Preventing student-on-student intimidation;

    g.   Preventing social media abuse by other students;

    h.   Properly investigating complaints of sexual abuse, hazing, bullying, harassment, and/or intimidation;

     i.   Properly remedying instances of sexual abuse, hazing, bullying, harassment, and/or intimidation;

     j.   Preventing retaliation against Junior as a result of bringing a complaint to the attention of Coach Brannen, Principal McKenna, and President Kubacki.

197.   Coach Brannen, Principal McKenna, and President Kubacki breached the duties owed to Junior as they: failed to protect him from foreseeable harm; failed to supervise students who they knew to have a history of inappropriate sexual misconduct; failed to supervise students in school-sponsored events; failed to prevent social media abuse, hazing, or bullying; failed to investigate or remedy claims of sexual abuse, hazing, bullying, harassment, and/or intimidation; and failed to prevent retaliation against Junior.

198.   Coach Brannen, Principal McKenna, and President Kubacki's negligence caused Junior physical, mental, and emotional harm, caused Junior's grades to suffer, and caused Junior to withdraw from St. Edward High School.

199.   As a direct and proximate cause of Coach Brannen, Principal McKenna, and/or President Kubacki's negligence, Junior sustained and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

200.   The actions of Coach Brannen, Principal McKenna, and President Kubacki's were undertaken willfully, maliciously, and/or with reckless disregard, and thereby subjecting them to punitive and exemplary damages.

## COUNT SIX – NEGLIGENCE PER SE
**(Plaintiffs against Coach Brannen, Principal McKenna, and President Kubacki)**

201.  Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

202.  In addition to the other duties of care set forth herein, Coach Brannen, Principal McKenna, and President Kubacki owed Junior a duty to refrain from recklessly permitting the hazing of Junior, as set forth in O.R.C. § 2903.31(B)(2).

203.  Each instance in which Jayden Williams perpetrated a sexual assault and battery upon Junior constituted an act of "hazing," as defined at O.R.C. § 2903.31(A)(1).

204.  Coach Brannen, Principal McKenna, and/or President Kubacki possessed actual and/or constructive knowledge of each instance in which Jayden Williams perpetrated a sexual assault and battery upon Junior.

205.  Coach Brannen, Principal McKenna, and/or President Kubacki breached their duty to refrain from recklessly permitting Junior to be hazed by, *inter alia*, failing to enact any measures to prevent the hazing and/or continued hazing of Junior; failing to protect Junior from foreseeable harm; failing to supervise students they knew to have a history of inappropriate sexual misconduct; failing to supervise students in school-sponsored events; failing to prevent social media abuse; failing to investigate or remedy claims of hazing; and/or failing to prevent retaliation against Junior.

206.  Coach Brannen, Principal McKenna, and President Kubacki's negligence caused Junior physical, mental, and emotional harm, caused Junior's grades to suffer, and caused Junior to withdraw from St. Edward High School.

207.  As a direct and proximate cause of Coach Brannen, Principal McKenna, and President Kubacki's negligence, Junior sustained and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment,

reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

208.    Coach Brannen, Principal McKenna, and President Kubacki's actions were undertaken willfully, maliciously, and/or with reckless disregard, thereby subjecting them to punitive and exemplary damages.

### COUNT SEVEN–INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiffs against Coach Brannen, Principal McKenna, and President Kubacki)**

209.    Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

210.    Coach Brannen, Principal McKenna, and President Kubacki knew that Delinquent 1 was a problematic student, particularly in an unsupervised setting.

211.    Coach Brannen, Principal McKenna, and President Kubacki allowed Jayden Williams access to Junior in an unsupervised setting, whereupon Junior was sexually assaulted and battered.

212.    That sexual assault and battery was witnessed, recorded, and shared among students.

213.    When it was reported, Coach Brannen, Principal McKenna, and President Kubacki attempted to dissuade, minimize, cover-up, and destroy information relevant to Junior's grievances.

214.    Coach Brannen, Principal McKenna, and President Kubacki lied about their commitment to an investigation.

215.    Coach Brannen, Principal McKenna, and President Kubacki neither investigated nor remedied the student-on-student sexual assault and battery, bullying, hazing, intimidation, and retaliation.

216.    Coach Brannen, Principal McKenna, and President Kubacki placed Junior in a position where he was required to have continued contact with the student who sexually

assaulted and battered him and the other students who mocked, intimidated, and retaliated against him.

217.    Coach Brannen, Principal McKenna, and President Kubacki continued to harass Junior by refusing to award him any academic credit for the first quarter of the 2020 academic year before he left St. Edward High School.

218.    Coach Brannen, Principal McKenna, and President Kubacki  continued to harass Junior by placing him into the same track meets and events with Junior, despite their specific knowledge that Jayden Williams is restrained from any contact with Junior by the Cuyahoga County Juvenile Court's Civil Protection Order.

219.    Coach Brannen, Principal McKenna, and President Kubacki's conduct was outrageous.

220.    Coach Brannen, Principal McKenna, and President Kubacki's conduct was either negligent, reckless, or intended to cause emotional distress to Junior.

221.    As a result of Coach Brannen, Principal McKenna, and President Kubacki's  conduct, Junior suffered severe and debilitating physical and emotional distress, including vomiting, insomnia, anxiety, and other post-traumatic stress.

222.    As a direct and proximate result of Coach Brannen, Principal McKenna, and President Kubacki's conduct, Junior sustained and will continue to suffer harm including, but not limited to emotional and physical distress, mental anguish, and other economic and non-economic damages.

223.    The actions of Coach Brannen, Principal McKenna, and President Kubacki were undertaken willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages, including an award of attorney fees.

## COUNT EIGHT – ASSAULT AND BATTERY
### (Plaintiffs against Jayden Williams)

224.    Plaintiffs restate each allegation set forth in this *Complaint*  as if fully rewritten herein.

225.    As more fully set forth herein, Jayden Williams willfully and intentionally threatened, attempted, and ultimately executed a harmful and offensive touching upon Junior on at least three (3) separate occasions during the Bellville Camp. Each such action was undertaken with the intent to inflict injury upon Junior and/or create the fear of injury within Junior's mind.

226.    As more fully set forth herein, Jayden Williams willfully and intentionally threatened, attempted, and executed a harmful and offensive touching upon Junior at the Team Dinner. This conduct was undertaken with the intent to inflict injury upon Junior and/or create the fear of injury within Junior's mind.

227.    As more fully set forth herein, Jayden Williams willfully and intentionally threatened, attempted, and executed a harmful and offensive touching upon Junior at the Dayton Meet. This conduct was undertaken with the intent to inflict injury upon Junior and/or create the fear of injury within Junior's mind.

228.    Each of the foregoing instances constitutes a sexual assault and battery by Jayden Williams upon Junior.

229.    Junior did in fact sustain physical, emotional, and mental injuries as a result of each sexual assault and battery Jayden Williams executed upon him.

230.    As a direct and proximate result of Jayden Williams' conduct, Junior sustained economic injuries in an amount to be determined at trial.

231.  The actions of Jayden Williams were undertaken willfully, maliciously, and/or with reckless disregard of Junior, thereby subject Jayden Williams to punitive and exemplary damages, as well as an award of attorney fees.

## COUNT NINE – VIOLATION OF O.R.C. § 3109.10
### (Plaintiffs against Darryl E. Williams)

232.  Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

233.  O.R.C. § 3109.10 imposes liability upon the parent of a minor for the assaults and batteries perpetrated by the parent's minor child.

234.  As set forth more fully herein, including at Count Eight above, Jayden Williams perpetrated at least five (5) sexual assaults and batteries upon Junior.

235.  Each sexual assault and battery Jayden Williams perpetrated upon Junior was undertaken willfully and maliciously, with a means or force likely to produce great bodily harm.

236.  Darryl E. Williams is Jayden Williams' father, and is therefore liable for Jayden Williams' sexual assaults and batteries upon Junior via O.R.C. § 3109.10.

237.  As a direct and proximate result of the violation of O.R.C. § 3109.10, Junior sustained economic injuries in an amount to be determined at trial, as well as all costs of suit, including court costs, litigation expenses, and attorney fees.

## COUNT TEN – VIOLATION OF O.R.C. § 3109.10
### (Plaintiffs against Lashan D. Spencer)

238.  Plaintiffs restate each allegation set forth in this *Complaint*  as if fully rewritten herein.

239.  O.R.C. § 3109.10 imposes liability upon the parent of a minor for the sexual assaults and batteries perpetrated by the parent's minor child.

240.  As set forth more fully herein, including at Count Eight above, Jayden Williams perpetrated at least five (5) sexual assaults and batteries upon Junior.

241. Each sexual assault and battery Jayden Williams perpetrated upon Junior was undertaken willfully and maliciously, with a means or force likely to produce great bodily harm.

242. Lashan D. Spencer is Jayden Williams' mother, and is therefore liable for Jayden Williams' sexual assaults and batteries upon Junior via O.R.C. § 3109.10.

243. As a direct and proximate result of the violation of O.R.C. § 3109.10, Junior sustained economic injuries in an amount to be determined at trial, as well as all costs of suit, including court costs, litigation expenses, and attorney fees.

**COUNT ELEVEN – CONSPIRACY TO COMMIT ASSAULT AND BATTERY**
**(Plaintiffs against Jayden Williams, Thomas Hoffman, and Evan Typpo)**

244. Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

245. As set forth more fully herein, Jayden Williams perpetrated three (3) sexual assaults and batteries upon Junior at the Bellville Camp, a sexual assault and battery at the Team Dinner, and a sexual assault and battery at the Dayton Meet.

246. Thomas Hoffman and Evan Typpo passively witnessed, and were complicit in, Jayden Williams' sexual assault and battery of Junior during the Team Dinner.

247. Thomas Hoffman and Evan Typpo later maliciously combined with Jayden Williams to perpetrate the subsequent sexual assault and battery upon Junior at the Dayton Meet by, *inter alia*, working to gain access to Junior's hotel room; entering Junior's hotel room; standing guard in and around Junior's hotel room; and otherwise enabling, provoking, and encouraging the sexual assault and battery upon Junior.

248. The sexual assault and battery perpetrated upon Junior at the Dayton Meet is an unlawful act independent of the conspiracy between Thomas Hoffman, Evan Typpo, and Jayden Williams.

249.     As a direct and proximate result of Thomas Hoffman, Evan Typpo, and Jayden Williams' conduct, Junior sustained suffered economic injuries in an amount to be determined at trial.

250.     The actions of Jayden Williams were undertaken willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages, as well as an award of attorney fees.

### COUNT TWELVE – NEGLIGENCE
### (Plaintiffs against Jayden Williams)

251.     Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

252.     Jayden Williams owed Junior the duty of care to refrain from causing Junior physical, mental, and emotional harm.

253.     Jayden Williams breached his duty of care to Junior by, *inter alia*, perpetrating three (3) separate sexual assaults and batteries upon Junior at the Bellville Camp; perpetrating a sexual assault and battery upon Junior at the Team Dinner; perpetrating a sexual assault and battery upon Junior at the Dayton Meet; and intimidating Junior into providing false or misleading information about each of the foregoing events to legal and/or school authorities.

254.     Jayden Williams' negligence caused Junior physical, mental, and emotional harm, caused Junior's grades to suffer, and caused Junior to withdraw from St. Edward High School.

255.     As a direct and proximate cause of Jayden Williams' negligence, Junior sustained and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

256. Jayden Williams' actions were undertaken willfully, maliciously, and/or with reckless disregard, and thereby subjecting them to punitive and exemplary damages.

**COUNT THIRTEEN – INFLICTION OF EMOTIONAL DISTRESS**
**(Plaintiffs against Jayden Williams, Thomas Hoffman, and Evan Typpo)**

257. Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

258. As more fully described herein, Jayden Williams perpetrated three (3) sexual assaults and batteries upon Junior at the Bellville Camp, a sexual assault and battery at the Team Dinner, and a sexual assault and battery at the Dayton Meet.

259. Thomas Hoffman and Evan Typpo passively witnessed, and were complicit in, Jayden Williams' sexual assault and battery of Junior during the Team Dinner.

260. Thomas Hoffman and Evan Typpo later maliciously combined with Jayden Williams to perpetrate the subsequent sexual assault and battery upon Junior at the Dayton Meet by, *inter alia*, working to gain access to Junior's hotel room; entering Junior's hotel room; standing guard in and around Junior's hotel room; and otherwise enabling, provoking, and encouraging the sexual assault and battery upon Junior.

261. Th sexual assault and battery of Junior at the Dayton Meet was witnessed, recorded and shared among St. Edward High School students, including but not limited to Jayden Williams, Thomas Hoffman, and Evan Typpo.

262. At various times, Jayden Williams, Thomas Hoffman, and Evan Typpo continued to ridicule and torment Junior—via in person interactions and via social media—about each of the sexual assaults and batteries perpetrated upon Junior.

263. Jayden Williams, Thomas Hoffman, and Evan Typpo's conduct was outrageous.

264. Jayden Williams, Thomas Hoffman, and Evan Typpo's conduct was either negligent, reckless, or intended to cause emotional distress to Junior.

265.    As a result of Jayden Williams, Thomas Hoffman, and Evan Typpo's conduct, Junior suffered severe and debilitating physical and emotional distress, including vomiting, insomnia, anxiety, and other post-traumatic stress.

266.    As a direct and proximate result of Jayden Williams, Thomas Hoffman, and Evan Typpo's conduct, Junior sustained and will continue to suffer harm including, but not limited to emotional and physical distress, mental anguish, and other economic and non-economic damages.

267.    The actions of Jayden Williams, Thomas Hoffman, and Evan Typpo's were undertaken willfully, maliciously, and/or with reckless disregard, thereby subjecting them to punitive and exemplary damages, including an award of attorney fees.

## COUNT FOURTEEN – SPOLIATION OF EVIDENCE
### (Plaintiffs against all Defendants)

268.    Plaintiffs restate each allegation set forth in this *Complaint* as if fully rewritten herein.

269.    All Defendants actually knew or should have known that Junior's claims relating to sexual abuse, bullying, hazing, intimidation and/or retaliation would result or were likely to result in litigation by Plaintiffs.

270.    Defendants willfully destroyed evidence and/or directed the students under their control to destroy evidence.

271.    The destroyed evidence included potential criminal evidence, including pedophilic images and videos, as well as evidence of the sexual assaults and batteries, bullying, hazing, and intimidation against Junior.

272.    The destroyed evidence was designed to interfere with an investigation.

273.    Defendants were under a duty to preserve evidence that they actually knew or reasonably should have known was relevant to Plaintiffs' claims.

274.    Junior has been damaged by the destruction of evidence as it has prevented him from a complete investigation and preservation of his rights and remedies.

275.    As a direct and proximate result of Defendants' spoliation of evidence, Junior sustained economic injuries in an amount to be determined at trial.

276.    The actions of Defendants were undertaken willfully, maliciously, and/or with reckless disregard, thereby subjecting them to punitive and exemplary damages, as well as an award of attorney fees.

**WHEREFORE,** having fully pled each cause of action, Plaintiffs respectfully request this Court enter judgment in their favor on all causes of action and award the following relief:

A.    As against St. Edward High School:

•    On Counts One and Two: All legal and equitable remedies available for violations of Title IX, with compensatory damages including damages for the loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages, as well as attorney fees and costs.;

•    On Count Three: Compensatory damages resulting from St. Edward High School's breach of contract.

•    On Count Four: Compensatory damages resulting from St. Edward High School's conduct, as well as punitive damages and attorney fees.

B.    As against Brannen, McKenna, and Kubacki, jointly and severally:

- On Counts Five, Six, and Seven: Compensatory damages resulting from Brannen, McKenna, and Kubacki's conduct, as well as punitive damages and attorney fees.

C.   As against Jayden Williams:

- On Counts Eight, Eleven, Twelve, and Thirteen: Compensatory damages resulting from Jayden Williams' conduct, as well as punitive damages and attorney fees.

D.   As against Darryl E. Williams:

- On Count Nine: Statutory damages in the sum of $50,000 (i.e., $10,000 per assault and battery perpetrated by Jayden Williams), plus all costs of suit associated with this action, including attorney fees, courts costs, and other costs of litigation.

E.   As against Lashan D. Spencer:

- On Count Ten: Statutory damages in the sum of $50,000 (i.e., $10,000 per assault and battery perpetrated by Jayden Williams), plus all costs of suit associated with this action, including attorney fees, courts costs, and other costs of litigation.

F.   As against Thomas Hoffman:

- On Counts Eleven, Twelve, and Thirteen: Compensatory damages resulting from Thomas Hoffman's conduct, as well as punitive damages and attorney fees.

G.   As against Evan Typpo:

- • On Counts Eleven, Twelve, and Thirteen: Compensatory damages resulting from Evan Typpo's conduct, as well as punitive damages and attorney fees.

H. As against all Defendants:

- • On Count Fourteen: Compensatory damages resulting from Defendants' conduct, as well as punitive damages and attorney fees.

I. As against all Defendants:

- • The costs of this action; and

- • Such further relief as this Court deems just and equitable on any claim against any Defendant.

Respectfully Submitted,

*/s/ Marlon A. Primes*

Marlon A. Primes (#0043982)
Jeffrey C. Miller (#0068882)
Mathew E. Doney (#0093845)
BRENNAN MANNA DIAMOND LLC
200 Public Square, Suite 3270
Cleveland, Ohio 44114
P:  (216) 658-2155
F:  (216) 658-2156
E:  maprimes@bmdllc.com
    jcmiller@bmdllc.com
    medoney@bmdllc.com

*Attorneys for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) Fed. R. Civ. P., Plaintiffs hereby demands a trial by jury for

any and all issues triable of right by a jury.

Respectfully Submitted,

*/s/ Marlon A. Primes*

Marlon A. Primes (#0043982)
Jeffrey C. Miller (#0068882)
Mathew E. Doney (#0093845)
BRENNAN MANNA DIAMOND LLC
200 Public Square, Suite 3270
Cleveland, Ohio 44114
P:  (216) 658-2155
F:  (216) 658-2156
E:  maprimes@bmdllc.com
     jcmiller@bmdllc.com
     medoney@bmdllc.com

*Attorneys for Plaintiffs*

4892-8599-8870, v. 1